**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-14147

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

GRAY EDWARD RIVERA,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:24-cr-00018-WWB-SJH-1

_____

Before NEWSOM and LUCK, Circuit Judges, and LEIBOWITZ*, District Judge.

LEIBOWITZ, District Judge:

_____

* Honorable David S. Leibowitz, United States District Judge for the Southern District of Florida, sitting by designation.

Appellant Gray Edward Rivera hid three "spy cameras" in a bedroom belonging to his girlfriend's minor daughter. Rivera used the cameras to surreptitiously record the daughter as she dressed and undressed. The grand jury charged Rivera by superseding indictment with two counts of producing sexually explicit conduct of a minor and one count of attempted production of sexually explicit conduct of a minor, in violation of 18 U.S.C. §§ 2251(a) and (e). After trial, a petit jury found Rivera guilty on all three counts, and the district court then sentenced him principally to 262 months' imprisonment.

Rivera raises three issues on appeal, but the district court's handling of them at trial was entirely correct under our precedents. We therefore affirm Rivera's convictions.

## I.    FACTS AND PROCEDURAL HISTORY

Rivera first met the child victim ("CV") when she was nine or ten years old, when Rivera was dating CV's mother. CV and her mother later moved from Puerto Rico to Florida to live with Rivera.

Although CV initially viewed Rivera as a father figure, their relationship soured after Rivera assaulted CV's mother. Despite CV's reluctance to interact with him, Rivera attempted to communicate with CV about her personal life, particularly her intimate relationships with boys. Rivera also attempted to "bribe" CV with material goods, encouraged her to speak with him about her sex life, offered "advice" about what to do with boys, and

advised her that if she were to lose her virginity, she should do so "in the house."

When she was 14 or 15 years old, Rivera purchased and gave CV three items as "gifts": a Bluetooth speaker, a USB device charger, and an alarm clock that doubled as a digital picture frame. Unbeknownst to CV or her mother, however, each of these items contained hidden video-recording devices and at least one could record sound.

Rivera set up the Bluetooth speaker, USB charger, and digital picture frame on a vanity in CV's bedroom. The vanity faced a nightstand in which CV kept her underwear and bras. CV used the Bluetooth speaker in the bathroom when she showered and carried it back to her bedroom when she got dressed. After Rivera had arranged these devices, Rivera called CV while she was in her bedroom with a boy and instructed her to "put on some sexy clothes."

Rivera and CV's mother broke up around December 2023. Soon after the breakup, CV's mother discovered what she believed to be hidden cameras inside the Bluetooth speaker and certain other household items. She contacted the police.

Boxes for the Bluetooth speaker and digital picture frame were found in a small office area that Rivera had used in CV's home. One box contained a user manual for a Bluetooth speaker containing a hidden camera. The office area also contained a packing slip for the digital picture frame, which was addressed to Rivera at CV's home. In addition to the three items in CV's

bedroom, detectives discovered a hidden video-recording device in a smoke detector near the office.

Upon Rivera's return to Puerto Rico from an international trip, investigators from the Department of Homeland Security conducted a border search of Rivera and seized two cellular telephones (an iPhone and a Galaxy Z Fold phone). AT&T records showed that Rivera was the iPhone's subscriber and that the number associated with the Galaxy phone was connected to Rivera's employer. The name associated with the iPhone was "Gray Rivera," and the phones were linked to email addresses bearing the names "gray.rivera," "mantarivera21," and "grayrivera21." On each phone, investigators discovered emails delivered to those addresses confirming Rivera's purchase of the recording devices, as well as evidence that those email accounts were used to register for applications designed to control recording devices remotely and an application used to encrypt and conceal media. The iPhone also contained credit cards, usernames, and financial accounts in Rivera's name, as well as voice recordings in which the speaker self-identified as "Gray Rivera of Excalibur Solutions."

The Galaxy phone contained three categories of sexually explicit image files. The first file contained 11 still frames from a video showing CV in the process of changing clothes. In the first frame, CV appeared to be fully nude and was partially visible, bending over, exposing her bare buttocks. In frames two through four, she was visible from her knees to the middle of her head, as

she put on a garment.  In the fifth frame, the garment covered her torso, but her bare belly, groin, and thighs were visible.  The sixth frame was the same, except her bare breasts were also showing.  CV was not in view in the last four frames.  Forensic investigation revealed that this file had last been accessed on October 24, 2023.

The second file contained a 34-second video initially depicting CV in the nude, visible from the side, with her breasts exposed.  CV then stepped mostly out of frame as she put on her underwear.  The camera view then pivoted to the left and then to the right, putting CV back in frame of view as she put on a pair of pants.  The video ended while CV was still shirtless.  Forensic investigation showed this video was created on October 25, 2023, and deleted on November 3, 2023.

The third file contained 13 still frames from a video depicting CV changing clothes.  In the first few frames, CV had a towel wrapped around her body, but by the fifth frame she was completely nude, with the camera focused on her groin area.  In the sixth frame, her bare breasts and pubic area were visible.  In the seventh frame, CV finished putting on her underwear, but her breasts remained visible.  Forensic investigation showed this file was last accessed on November 19, 2023.

Three months before trial was set to begin, the government filed a notice of intent to introduce similar-act evidence under Rules 404(b) and 414 of the Federal Rules of Evidence[1] ("the

---

[1] Under Rule 414(a), a court may "admit evidence that the defendant committed any other child molestation" in a "criminal case in which a defendant is

404/414 Notice"). The government noticed its intent to offer evidence—gathered from an interview with "Adult Victim 1" (referred to herein as G.V.O.)—that Rivera had "intentionally touched [G.V.O.] when she was a minor child in a lewd or lascivious manner." The 404/414 Notice described three incidents, including one in which Rivera "asked [G.V.O.] about engaging in sex with her boyfriend" and another in which Rivera showed G.V.O. "a picture of a woman in lingerie" while telling her that she would "[o]ne day . . . have [her] mom's body."

The third incident summarized in the 404/414 Notice (the only incident relevant on appeal) described a 2011 encounter in which Rivera approached G.V.O.—Rivera's stepdaughter, who was 13-years old at the time of the incident. While G.V.O. was in her bedroom Rivera entered wearing only a pair of boxer briefs; Rivera then removed his erect penis from the boxers, grabbed G.V.O. by the neck, and struck her in the face with his penis. G.V.O. protested loudly, after which Rivera clothed his penis and left the room.[2]

—————————

accused of child molestation." "Child molestation" is defined by the Rule to include offenses under 18 U.S.C. § 2251, the statute under which Rivera was charged. Fed. R. Evid. 414(d). If admitted, the jury may consider "[t]he evidence . . . on any matter to which it is relevant." *Id.* To offer such evidence under Rule 414, the government must "disclose it to the defendant, including witnesses' statements or a summary of the expected testimony." *Id.*

[2] The 404/414 Notice describes the event as follows: "In January of 2011, the defendant went into the bedroom of Adult Victim 1, a child at the time, while her mother was in the shower. The defendant was wearing only a pair of grey boxers and approached Adult Victim 1's bed where she was laying, grabbed

As set forth in the 404/414 Notice, the United States intended to offer this similar-act evidence to show Rivera's propensity to commit the charged offenses and to show Rivera's "prurient sexual interest in children, motive, intent, plan, and lack of mistake or accident." The District Court admitted the evidence over Rivera's objection, finding that the defendant had "not offer[ed] any evidence or argument to dispute [the] reliability" of G.V.O.'s testimony.

Prior to G.V.O.'s testimony at trial, the District Court instructed the jury that it was "about to hear evidence of acts allegedly done by [Rivera] on other occasions that may be similar to acts with which [Rivera] [was] currently charged" and that it could consider the evidence "for its bearing on any matter to which it [was] relevant." The court also stated that Rivera was on trial only for the offenses charged in the superseding indictment and that the similar-act evidence alone was insufficient to prove Rivera guilty of the charged offenses.

G.V.O. (27 years old at the time of Rivera's trial), testified in Spanish assisted by an interpreter. During her testimony, G.V.O. stated that Rivera had asked intrusive questions about her sex life and had urged her to trust him with secrets about that topic. G.V.O. then recounted many of the facts set forth above

---

her neck, and told her to look at his penis. Adult Victim 1 said that the defendant took his erect penis out of his boxers and hit her in the face with it. Adult Victim 1 said she protested loudly and cursed at him, and the defendant put his penis away and left her room."

concerning the 2011 incident in her bedroom. For the first time (and beyond the description of the incident set forth in the 404/414 Notice), however, G.V.O. testified that Rivera had not only grabbed her head but also had "obligated [her] to . . . perform oral sex on him."

Defense counsel immediately objected under Rules 403 and 404 of the Federal Rules of Evidence, arguing that G.V.O.'s testimony fell outside the 404/414 Notice. At a sidebar, counsel for the government assured the court that she was unaware of this allegation and had not intended to introduce testimony beyond what the government had set forth in the 404/414 Notice.[3] Defense counsel requested a mistrial, arguing that G.V.O.'s testimony was a "bell that [could not] be unrung," and that the evidence was unfairly prejudicial under Rule 403. The government responded that the testimony was "within the contours" of the 404/414 Notice, which sufficiently apprised Rivera of the "general nature" of the testimony. Noting that the testimony was "not all

---

[3] Indeed, the government initially suggested that counsel for Defendant had misconstrued G.V.O.'s testimony. *See* Trial Tr. 2-35:21–24 ("I don't [think] she's going to say that she actually performed [sic]. I think she's saying he wanted it, so I think that she will clarify that she . . . ."). Counsel for the government then examined G.V.O. in an attempt to understand the nature of her testimony, after which government counsel represented to the court that "this [was] the first time [government counsel was] hearing of this as well. It is something—the first time it came out [was] today." *See id.* 2-36:14–37:16. Counsel for Rivera then confirmed that he had no further questions concerning the "disclosure" of this new testimony. *Id.* 2-37:24–25.

that different" from the events described in the 404/414 Notice, the court took the request for a mistrial under advisement.

After excusing the jury, G.V.O. explained to the court that she had performed oral sex on Rivera but that the encounter had not progressed further. Counsel for the government asked G.V.O. if she had not felt "comfortable sharing" the incident with the case agent, to which G.V.O. responded that she had "been silent about what took place for 14 years," because the matter was "very difficult for [her] to speak on." Defense counsel then cross-examined G.V.O. outside the jury's presence, during which G.V.O. testified that she had informed a case agent that Rivera had placed his penis in her mouth but not that he had obligated her to perform oral sex.

Latching onto perceived inconsistencies in G.V.O.'s testimony, defense counsel protested that G.V.O. "ha[d] testified several times under oath now as to inconsistent statements as to who she told, what she told," and that her "ever evolving" narrative rendered her entire testimony unreliable and therefore inadmissible. At the conclusion of the cross-examination, defense counsel moved to strike all of G.V.O.'s testimony as inconsistent and unreliable.

The court struck only the final line of G.V.O.'s testimony—that Rivera had "obligated" her to perform sex—and, after much back and forth between the court and defense counsel, offered the following curative instruction, as requested by defense counsel: "The last statement made by the witness, the Court is going to

strike, and so you're instructed to disregard it." Defense counsel declined to cross-examine the witness before the jury. The district court ultimately denied the motion for mistrial.

In issuing its final jury instructions concerning the evidence admitted under Rules 404(b) and 414, the district court twice reiterated that evidence of similar acts alone was insufficient to prove Rivera guilty of the charged offenses and that he was not on trial for conduct or offenses not charged in the superseding indictment.

At the close of the government's case, Appellant moved for judgment of acquittal, arguing that the evidence, even when viewed in the light most favorable to the government, failed to prove beyond a reasonable doubt that Rivera had produced images featuring a child "engag[ed] in sexually explicit conduct," as required to sustain a conviction under 18 U.S.C. § 2256(8). The district court denied the motion.

The jury returned a guilty verdict on all counts, and the district court sentenced Rivera to 262 months' imprisonment. Rivera timely appealed.

## II.    STANDARD OF REVIEW

This Court reviews *de novo* the sufficiency of evidence underlying a conviction, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in its favor. *See United States v. Broughton*, 689 F.3d 1260, 1276 (11th Cir. 2012). We will not overturn a jury's

verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013).

A district court's evidentiary rulings and the denial of a motion for a mistrial based on improper testimony are reviewed for abuse of discretion. *United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009); *United States v. Fey*, 89 F.4th 903, 910 (11th Cir. 2023). This discretion exists because the trial judge "is in the best position to evaluate the prejudicial effect of improper testimony." *United States v. Perez*, 30 F.3d 1407, 1410 (11th Cir. 1994).

## III.    DISCUSSION

Appellant presents three issues on appeal: (1) whether G.V.O.'s testimony was so prejudicial as to warrant a mistrial; (2) whether the district court should have stricken G.V.O.'s testimony in its entirety; and (3) whether the evidence was sufficient for a reasonable jury to find that Rivera had produced images depicting "sexually explicit conduct" under 18 U.S.C. § 2256(8). We consider each issue in turn.

### A.    G.V.O.'s Testimony Did Not
### Substantially Prejudice the Trial Outcome

We have noted that "[a] trial judge has discretion to grant a mistrial since he is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *United States v.*

*Delgado,* 321 F.3d 1338, 1346–47 (11th Cir. 2003) (internal quotations and citation omitted).  In employing that discretion, the trial judge should grant a motion for mistrial if improperly introduced testimony prejudicially affects a defendant's substantial rights.  *See United States v. Newsome,* 475 F.3d 1221, 1227 (11th Cir. 2007).  Said another way, the district court should grant a mistrial "when a reasonable probability arises that, but for the [testimony], the outcome [of the trial] would be different."  *United States v. Wilson,* 149 F.3d 1298, 1301 (11th Cir. 1998) (citation omitted).  This determination is made considering the context of the entire trial and any curative instructions given by the trial judge.  *See id.* (citations omitted).  When the district court does provide curative instructions, "the reviewing court will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition."  *Delgado,* 321 F.3d at 1347 (internal quotations and citations omitted).  Furthermore, any error will be deemed harmless when the record contains sufficient independent evidence of guilt.  *See United States v. Adams,* 74 F.3d 1093, 1097–98 (11th Cir. 1996).

G.V.O.'s testimony did not prejudicially affect Appellant's substantial rights.  Taking into account the context of the entire trial, including the district court's curative instructions, Rivera has failed to show a reasonable probability that the outcome of his trial would have been different without the additional testimony that went beyond the 404/414 Notice.  *See Newsome,* 475 F.3d at 1227; *Wilson,* 149 F.3d at 1301.  That's true for several reasons.

First, the government's independent evidence of Rivera's guilt was very strong. As we have held, "[i]mproper and prejudicial testimony is less likely to mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact upon the verdict of the jury." *See Perez,* 30 F.3d at 1411 (cleaned up). Here, the government introduced ample evidence that Rivera ordered the spy cameras, installed them in CV's room, used them to record CV as she undressed, curated and stored the most prurient of the images he collected on his personal devices, and used applications designed to conceal the media from prying eyes. CV and G.V.O. also testified at length about Rivera's improper inquiries concerning their sex lives, reinforcing that Rivera produced these images to satisfy his prurient interests. Save for G.V.O.'s testimony, Rivera does not challenge any of that evidence on appeal.

Second, the district court offered three instructions aimed at insulating Rivera from any undue prejudice that might have arisen from G.V.O.'s additional similar-acts testimony that arguably went beyond the 404/414 Notice. Before G.V.O. testified at all, the district court offered the standard instruction that similar-acts evidence alone was insufficient to prove Rivera guilty of the charged offenses and that Rivera was not on trial for any offense not charged in the superseding indictment. Next, upon defense counsel's request, the trial judge specifically instructed the jury to disregard the last line of G.V.O.'s testimony. Finally, at the end of

the trial, the district court reiterated the standard similar-acts instruction.

We presume that juries follow instructions. *See United States v. Calderon,* 127 F.3d 1314, 1334 (11th Cir. 1997). Accordingly, in *Wilson*, we found that the defendant had failed to show "substantial prejudice" warranting a mistrial where the "record reveal[ed] that the district court made an effort to cure any prejudice that may have resulted from the prosecutor's remarks," including by "sustain[ing] an objection by Defendant and issu[ing] immediately a curative instruction to the jury to disregard the improper remark." 149 F.3d at 1302. This case is no different. A district court does not abuse its discretion when it determines that "several instructions [given] to the jury throughout the trial" effectively mitigated the prejudice arising from improper testimony. *Id.* (citing *United States v. Bailey,* 123 F.3d 1381, 1402 (11th Cir. 1997)). That is certainly true here.

Third, any prejudice arising from G.V.O.'s stricken testimony was minimal and too incremental to warrant a mistrial. To start, the improper testimony was "spontaneous and singular." *See United States v. Funt*, 896 F.2d 1288, 1295 n.5 (11th Cir. 1990) (citing *United States v. Ruz-Salazar*, 764 F.2d 1433 (11th Cir. 1985)); *United States v. Benz*, 740 F.2d 903, 916 (11th Cir. 1984)). In a long line of questioning, Rivera objected to just one of G.V.O.'s responses, and the district court found the testimony otherwise consistent with the assertions set forth in the 404/414 Notice. We have consistently maintained that "spontaneous and singular"

remarks do not warrant a mistrial, particularly when coupled with curative instructions. *See Funt*, 896 F.2d at 1295 n.5; *Benz*, 740 F.2d at 916.

And as the district court noted, it would be difficult to determine whether G.V.O.'s stricken testimony concerned conduct that was "necessarily any better or worse" than what the jury had already heard and what was clearly within the ambit of the 404/414 Notice. We have held that "there was no compelling prejudice where 'a reasonable jury undoubtedly would have found *both* the evidence of [the defendant's] child molestation and the evidence of [his] child pornography very inflammatory.'" *United States v. Blake*, 868 F.3d 960, 969 (11th Cir. 2017) (quoting *United States v. Hersh*, 297 F.3d 1233, 1243 (11th Cir. 2002)). The same holds here.

Recall that G.V.O. testified to the following facts: that when she was 13, Rivera entered her bedroom wearing only a pair of boxers; that he approached her, pulled his erect penis out of his boxers, and instructed her to "[l]ook at it"; that she felt "paralyzed"; and that Rivera grabbed the back of her head. And as to both G.V.O. and CV, the jury heard evidence of Rivera's lewd and inappropriate inquiries concerning the minors' sex lives—not to mention, of course, the ample evidence that Rivera had surreptitiously produced pornographic images of CV.

The (ultimately stricken) testimony that Rivera obligated G.V.O. to perform oral sex[5] was incremental to the flood of inflammatory and uncontested evidence properly introduced at trial concerning Rivera's conduct towards minors. Even without the district court's curative instruction, we cannot say that G.V.O.'s single line of stricken testimony was so prejudicial as to warrant a mistrial given the similar evidence properly admitted in the case.

Finally, Rivera has never maintained that the government had any foreknowledge of the scope of G.V.O.'s testimony and failed to disclose it. In the 404/414 Notice itself, the government properly relied on its interview with G.V.O. to "summarize" the

---

[5] Rivera appears to assume that the jury took this to mean that Rivera in fact raped or attempted to rape G.V.O. Contrary to that assumption, however, the colloquy between the government, defense counsel, and the district court reveals significant uncertainty as to the implication and impact of G.V.O.'s testimony. For example, after excusing the jury, counsel for the government presumed that G.V.O. was not "going to say that she actually performed [oral sex] [but rather] . . . she's saying he wanted it . . . ." The district court, for its part during this discussion, believed that G.V.O. had not "sa[id] anything about oral sex in front of the jury," but had instead testified that Rivera had "asked her to perform oral sex."

As we have held, a district court is entitled to discretion because it "is in the best position to evaluate the prejudicial effect of improper testimony.'" *Perez*, 30 F.3d at 1410. Here, the district court was in the best position to determine what, if any, prejudicial effect the improper testimony may have had upon the jury, and its determination that the testimony was at best ambiguous and at worst no more inflammatory than what the jury had already heard was not an abuse of discretion.

encounter between Rivera and G.V.O., which the district court reviewed and approved after considering Rivera's opposition. At trial, counsel for Rivera declined to examine G.V.O. concerning her new disclosure (finding the government's own examination adequate), and at oral argument did not dispute the accuracy of the government's representation that it lacked prior knowledge of the testimony. Accordingly, Rivera has never argued—and there is no evidence to suggest—that the government improperly withheld or otherwise failed to disclose the full scope of G.V.O.'s testimony.

For the foregoing reasons, Rivera has not demonstrated a reasonable probability that the outcome of the trial would have been different but for the introduction of G.V.O.'s stricken testimony. The district court did not abuse its discretion in denying Rivera's motion for mistrial.

### B.    The District Court Properly Declined to Strike G.V.O.'s Testimony in Its Entirety

Rivera next argues that the district court should have stricken G.V.O.'s testimony in its entirety because it was unreliable and lacked corroboration. To the extent Rivera preserved this argument and has properly presented it here on appeal, we find it unconvincing. To start, evidence introduced under Rules 404(b) and 414 need not be corroborated at all. Rather, "[t]o have Rule 404(b) prior act evidence admitted, the proponent need only provide enough evidence for the trial court to be able to conclude that the jury could find, by a preponderance of the evidence, that the prior act had been proved." *United States v. Green*, 873 F.3d 846,

18                 Opinion of the Court                 24-14147

864 (11th Cir. 2017).  The government can do so "by calling witnesses to testify." *Id.*  The district court determined in advance of trial that the government had carried its burden and that the similar-acts evidence could properly be introduced.  Rivera has not preserved a challenge to that initial ruling.

Nor has Rivera shown that G.V.O. perjured herself at trial or that G.V.O. otherwise rendered her testimony so unreliable as to warrant striking it in its entirety.  Perjury requires a witness's "willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory." *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010) (cleaned up).  Far from a willful intent to provide false testimony, the record reflects a witness struggling through a language barrier to recount traumatic, 14-year-old events before an open, public courtroom during a jury trial.  The fine distinctions between hitting G.V.O. in the face with Rivera's penis, placing Rivera's penis in her mouth, and "obligating" her to perform oral sex might well have been lost on G.V.O.  Rivera has produced no evidence that inconsistencies in G.V.O.'s testimony were the result of her "willful intent to provide false testimony," rather than "mistake, confusion, or faulty memory." *Id.*

In any event, G.V.O.'s testimony is not inconsistent.  She suggested at trial that she had disclosed the incident contemporaneously to her mother but testified that she had been "silent" as to the full scope of the incident in the intervening years, including in her conversations with the government, given the

sensitive nature of the subject matter. Moreover, G.V.O.'s testimony at trial that Rivera may have forced or attempted to force her to perform oral sex merely builds on those existing and uncontested allegations—it does not contradict them.

Finally, the single line of challenged testimony was stricken, and G.V.O.'s testimony was otherwise entirely consistent with the facts set forth in the 404/414 Notice. Had G.V.O.'s statement that Rivera obligated her to perform oral sex been included in the 404/414 Notice, there can be little doubt that the evidence would have been deemed reliable and introduced at trial along with the rest of her recounting of the incident. Indeed, defense counsel all but conceded as much at trial when he suggested that "oral sex [could] . . . , of course, still be considered as far as similar fact evidence," but for the failure to satisfy the notice requirement.

## C. Sufficient Evidence
### Supported Rivera's Convictions

Finally, Rivera argues that the material introduced at trial depicted "mere nudity," rather than the "sexually explicit conduct" required to sustain Rivera's convictions under 18 U.S.C. § 2251(a) and (e). Rivera's three convictions—two for the sexual exploitation of a minor and one for the attempted sexual exploitation of a minor—were supported by images depicting CV in the process of dressing and undressing. Rivera argues on appeal that this evidence was insufficient for a jury to find him guilty, as "[t]he images . . . were simply . . . of [a] girl changing clothes[.] [T]here

was nothing sexual about the images whatsoever." Appellant's Br. at 33.

Federal law defines "child pornography" as "any visual depiction, including any photograph, film, video, picture, or computer or computer generated image or picture" where "the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8). A defendant commits the crime of production of child pornography when he "uses, persuades, induces, entices, or coerces" a minor to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct," using materials that have traveled in interstate commerce. *Id.* § 2251(a). The relevant statute defines "sexually explicit conduct" as:

   i. sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

   ii. bestiality;

  iii. masturbation;

  iv. sadistic or masochistic abuse; or

   v. lascivious exhibition of the anus, genitals, or pubic area of any person.

*Id.* § 2256(2)(A). Rivera's convictions implicate the last of these categories: "lascivious exhibition of the anus, genitals, or pubic area."

Our case law has defined "lascivious exhibition" as a display that "potentially excites sexual desires or is salacious." *United States v. Grzybowicz*, 747 F.3d 1296, 1306 (11th Cir. 2014) (cleaned up). We have explained that sexually explicit material "needn't always be 'dirty' . . . to qualify" as "lascivious exhibition of the genitals or pubic area." *United States v. Williams*, 444 F.3d 1286, 1299 (11th Cir. 2006), *rev'd on other grounds*, 553 U.S. 285 (2008).

More recently, we held in *United States v. Holmes* that "depictions of otherwise innocent conduct by a minor [could] constitute 'a lascivious exhibition of the genitals or pubic area' based on the actions of the individual creating the depiction." 814 F.3d 1246, 1247 (11th Cir. 2016). *Holmes* effectively decides this issue.

Like this case, *Holmes* involved a defendant charged with "surreptitiously videotaping his teenage stepdaughter . . . and being in possession of videos and depictions of her in the nude." *Id.* Similar to Rivera, "Holmes hid video cameras in [his stepdaughter's] bathroom in order to capture her daily routine without her knowledge," and "videoed [her] as she sang, danced, stood in front of the mirror, applied creams or lotions to her body, groomed, and performed other bathroom routines." *Id.* at 1249. Holmes captured and stored videos and images of his stepdaughter in the nude or fully or partially clothed, at times revealing her nude breasts and at other times her pubic area. *See id.* at 1249–50.

In affirming the denial of Holmes's motion for judgment of acquittal, we rejected the precise argument Rivera advances here,

holding instead that a court may look "to the intent of the producer or editor of an image" to determine whether it "constitutes a lascivious exhibition," even if the image depicts an "innocent child acting innocently." *Id.* at 1252. In other words, we held that the *exhibition* must be lascivious—not the child. Joining the Eighth, Ninth, and Tenth Circuits,[7] the *Holmes* panel focused on the intent of the producer or editor of the image to determine whether the "lascivious exhibition" category of "sexually explicit conduct" had been proved. *See id.* at 1251–52. "[T]o find otherwise would ignore the obvious exploitive nature of the depiction and require the child to exhibit lust, wantonness, sexual coyness or other inappropriate precocity. Such an interpretation would pervert both the language and the logic of the legislation and the case law." *Id.* at 1252 (quoting *Wolf*, 890 F.2d at 246).

So, the use of "freeze-framing" that "focus[es] the viewer's attention on the pubic area," might suggest the producer's lascivious intent. *Id.* (quoting *Horn*, 187 F.3d at 790). Similarly, the manner in which a "zoom feature [is] adjusted" or the arrangement of a photograph may be sufficient for a jury to find that the producer depicted the child as a "sexual object" intended to "arouse or satisfy the sexual cravings . . . of himself or like-minded

---

[7] *See United States v. Horn,* 187 F.3d 781, 790 (8th Cir. 1999); *United States v. Wiegand,* 812 F.2d 1239, 1244 (9th Cir. 1987); *United States v. Wolf,* 890 F.2d 241, 246 (10th Cir. 1989); *but see United States v. Hillie*, 39 F.4th 674, 686 (D.C. Cir. 2022) (holding, after *Holmes*, that "lascivious exhibition of the genitals" requires the "display[] [of the] anus, genitalia, or pubic area in a lustful manner that connotes the commission of a sexual act").

pedophiles." *Id.* (first quoting *United States v. Johnson*, 639 F.3d 433, 440–41 (8th Cir. 2011); and then quoting *Wiegand*, 812 F.2d at 1244).

Applying this test to the facts in *Holmes*, we held that a reasonable jury could have concluded that the defendant produced a lascivious exhibition of the genitals or pubic area of a minor based on the "placement of the cameras in the bathroom where his stepdaughter was most likely to be videoed while nude, his extensive focus on videoing and capturing images of her pubic area, the angle of the camera set up, and his editing of the videos at issue." *Id.*

All of those considerations apply here and decide this issue in the government's favor. Rivera arranged the hidden cameras in CV's bedroom (one place where a minor can be expected to undress frequently) and provided CV with a Bluetooth speaker that CV used while showering in her bathroom. Rivera also arranged the cameras to focus on CV's dresser, which contained her underwear and bras, making it likely that the cameras would capture CV nude. Finally, Rivera extensively curated the recordings, retaining just a handful of still frames and a few dozen seconds of video footage depicting CV's exposed breasts, buttocks, and pubic area.

Rivera's attempts to distinguish *Holmes* are unavailing. He first argues that his case is distinguishable because "[t]he cameras at issue here were in the bedroom, not the bathroom." That argument ignores that Rivera provided CV with a Bluetooth

speaker that she used while showering.  Even setting that fact to the side, Rivera's distinction splits hairs—a minor might as well be expected to be found in a state of undress in her bedroom as in her bathroom.  It also ignores the fact that Rivera appeared to anticipate that more explicit conduct would take place in the bedroom.  Indeed, Rivera facilitated that outcome by encouraging CV to have sex in the home and by calling CV while she was in her bedroom with a boy to prompt her to "put on some sexy clothes."

Next, Rivera argues that the cameras here "were simply aimed out into the room from the vanity," and "were not specifically angled to capture the pubic region."  That's not factually correct.  As already discussed, Rivera's hidden cameras were not "simply aimed out into the room," but angled towards CV's nightstand, which contained her undergarments, increasing the likelihood that the cameras would capture CV in a state of undress.  And the fact remains that Rivera's cameras *did* capture CV's pubic region, and Rivera retained those images as still frames.  The fact that Rivera secreted this material away is further proof that these exhibitions were lascivious and intended to "arouse or satisfy the sexual cravings . . . of himself or like-minded pedophiles."  *Holmes*, 814 F.3d at 1252 (citation modified).

Finally, Rivera argues that the "depictions captured by the cameras were not edited in a way to make them sexually explicit."  That's also wrong as a factual matter.  Rivera edited footage to retain just a handful of explicit still-frames and a few seconds of footage of CV's breasts, buttocks, and pubic region.  Moreover,

unlike *Holmes*, the trial evidence here permitted a reasonable jury to conclude that Rivera *manipulated the angle of the cameras remotely*, as shown by the pivoting viewing angle on the video recordings themselves as well as the applications found on Rivera's phones, which could be used to remotely monitor and control the cameras.

Perhaps anticipating the outcome dictated by *Holmes*, Rivera encourages this Court to adopt the six-factor test for lasciviousness set forth in *United States v. Dost,* 636 F. Supp. 828 (S.D. Cal. 1986). In the past, we have declined to consider this "multi-factor analysis" and have found it "unnecessary [to] . . . [d]ecid[e] whether the *Dost* factors should be part of the law of our circuit." *United States v. Grzybowicz*, 747 F.3d 1296, 1306 & n.8 (11th Cir. 2014). Because *Holmes* plainly controls this issue and dictates a clear outcome, we again find it unnecessary to adopt the *Dost* factors here.

In a similar vein, Rivera urges us to reconsider our precedent in light of *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022). Relying on *United States v. Williams*, 553 U.S. 285 (2008),[8] the D.C. Circuit held in *Hillie* that videos depicting a minor merely engaged in "ordinary grooming activities" could not fall within the

---

[8] The Supreme Court suggested in *Williams* that the phrase "sexually explicit conduct . . . connote[d] actual depiction of the sex act rather than merely the suggestion that it is occurring." *United States v. Williams*, 553 U.S. 285, 297 (2008) (internal quotations omitted and emphasis modified). As the dissenting opinion in *Hillie* explained, that language is distinct from the phrase that is immediately at issue here: "lascivious exhibition of the genitals or pubic area of any person." 39 F.4th at 700 n.19 (Henderson, J., dissenting).

definition of "lascivious exhibition of the genitals," because the "conduct depicted . . . must consist of [the] display[] [of the] anus, genitalia, or pubic area in a lustful manner that connotes the commission of a sexual act." *Hillie*, 39 F.4th at 685–86 (cleaned up). Under the prior-panel precedent rule, however, we must follow our prior published decisions, notwithstanding any alleged inconsistencies with Supreme Court precedent. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001) ("[W]e categorically reject any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at the time."); *see also United States v. Fritts*, 841 F.3d 937, 942 (11th Cir. 2016) ("[T]here is never an exception carved out for overlooked or misinterpreted Supreme Court precedent."). So, the prior-panel-precedent rule prohibits us from departing from *Holmes*. *See Scott v. United States*, 890 F.3d 1239, 1257 (11th Cir. 2018) ("The prior-panel-precedent rule requires subsequent panels of the court to follow the precedent of the first panel to address the relevant issue, 'unless or until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court.'") (quoting *Smith*, 236 F.3d at 1300 n.8).

## IV.   CONCLUSION

Rivera has failed to show that G.V.O.'s stricken testimony substantially prejudiced the outcome of his trial. He has also failed to show that the district court abused its discretion by refusing to strike the entirety of G.V.O.'s testimony. Finally, Rivera failed to show that evidence submitted to the jury was insufficient to

24-14147                Opinion of the Court                27

convict under 18 U.S.C. §§ 2251(a) and (e).  Thus, the district court correctly denied Appellant's motion for mistrial and motion for judgment of acquittal.  We **AFFIRM** Rivera's convictions.